UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MASON AGENCY LTD.,                :
                      Plaintiff,    :    09 Civ. 6474 (DLC)
                                          :
           -v-                    :
                                          :    <u>OPINION & ORDER</u>
EASTWIND HELLAS SA,             :
                       Defendant.    :
                                          :
----------------------------------------X

Appearances:

For Plaintiff:
George Michael Chalos
Chalos & Co., P.C.
123 South Street
Oyster Bay, NY 11771

For Defendants:
Michael G. Chalos
Brian T. McCarthy
Chalos, O'Connor & Duffy LLP
366 Main Street
Port Washington, NY 11050

DENISE COTE, District Judge:

      Plaintiff Mason Agency Ltd. ("Mason") filed a verified complaint ("Complaint") in this admiralty action on July 21, 2009, requesting an Order to Issue Process of Maritime Attachment and Garnishment under Rule B of the Supplemental Rules to the Federal Rules of Civil Procedure for Certain Admiralty and Maritime Claims ("Supplemental Rules"). On August 3, an attachment was authorized by the Court in the amount of $116,369.84. Defendant Eastwind Hellas S.A. ("Hellas") now

moves to vacate the maritime attachment under Supplemental Rule
E(4)(f).  In its opposition to the motion, Mason seeks leave to
amend its Verified Complaint, to compel limited discovery, and
to stay vacatur of the attachment pending appeal.  For the
following reasons, Hellas's motion to vacate the maritime
attachment is granted, Mason's requests to compel discovery and
stay vacatur are denied, and Mason's application for leave to
amend the Complaint is granted.


<u>BACKGROUND</u>

On July 21, 2009, Mason filed the Complaint initiating a
lawsuit in this Court and naming Hellas as the sole defendant.
Mason asserted separate causes of action for breach of contract,
account stated, and unjust enrichment/quantum meruit.

The specific facts alleged in the Complaint are as follows.
In May 2009, Mason was requested by Hellas, in the latter's role
as "operator/manager of the M/V YSTWYTH," to provide "vessel
husbanding and agency services" to the M/V Ystwyth ("Vessel") at
the Port of Vancouver.  In furtherance of the agreements between
Mason and Hellas, Mason obtained and provided various necessary
goods and services for the operation of the Vessel while it was
in port, including bunkering, pilotage, obtaining proper
certifications, and handling port charges, terminal expenses,
and bills of lading.  Pursuant to the agreements, Mason later

invoiced and demanded payment from Hellas, but Hellas, "in violation of [its] obligations under the terms and conditions of the agency agreements," refused to pay the outstanding balances that were "undisputedly due and owing" for the services rendered by Mason.  Mason identified its principal claim as $93,117.00, plus estimated interest in the amount of $23,252.84, for a total of $116,369.84.  Attached to the Complaint was a two-page estimate prepared by Mason on or about May 4, 2009, which identified the value of the services to be provided as $93,117.00.  Mason did not, however, attach to the Complaint any of the agreement(s) that Mason purported to have with the defendant.

On August 3, on the basis of the representations contained in the Complaint and the accompanying sworn affidavits, this Court issued an Order to Issue Process of Maritime Attachment and Garnishment in the amount of $116,389.84.  On August 13, Mason restrained eighteen wire transfers from garnishees Citibank and HSBC in the total attachment amount.  On the same date, Mason's counsel served a copy of the Complaint and notified Hellas that it had restrained its electronic funds transfers.  By letter of August 17, plaintiff's counsel also informed the Court that plaintiff had restrained the transfers. By Order of August 24, the Court directed the garnishee banks to

transfer the attached funds to the Clerk of Court to be deposited in the Court's registry.

On August 27, Hellas moved to vacate the maritime attachment pursuant to Supplemental Rule E(4)(f).  The attached memorandum of law stated that Hellas "was never the owner or operator" of the Vessel and "was never a party to any contract, written or oral, with Mason."  According to Hellas, the only contact that it had with Mason in conjunction with this transaction was Hellas's email request to Mason on May 7 that Mason arrange for a radio technician to install a piece of communications equipment on board the Vessel.  That email identifies Hellas "as agents only" for the Vessel.  Hellas represented that Mason had instead contracted with a different company, Eastwind Maritime Inc. ("Maritime"), which in turn had acted as an agent for the Vessel's owner, Ystwyth Marine Ltd. ("Ystwyth Ltd.").  The attached attorney's declaration further informed the Court that both Ystwyth Ltd. and Maritime had filed for Chapter 7 bankruptcy protection in the Southern District of New York.  The declaration noted that Hellas has not filed for bankruptcy.

A conference was held with the parties on August 31.  Upon the Court's specific request, Mason presented to the Court and to Hellas a copy of the agreement upon which Mason had rendered its services.  The May 5, 2009 agreement was a five-page

4

document entitled "Port Agency Appointment and Pro-forma
Disbursement Account Request" (the "Appointment").  The
Appointment clearly reflected a contract between Mason and
Maritime.  Mason later provided the Court with its May 5, 2009
"Appointment Acceptance with Pro-forma Disbursement Account
Letter" ("Acceptance"), which also listed the contract parties
as Mason and Maritime.  Neither the Appointment nor the
Acceptance mention Hellas.

Mason's September 8 opposition to the motion to vacate
advances a theory that Hellas should be held liable on the
unpaid debts incurred under the Appointment because Hellas is
the "beneficial owner" of the Vessel.  Mason alleges that "all
'owners'' items, including . . . payments for crew wages, spare
parts and inspections were handled" by Hellas and that "[a]ll
disbursements made by [Mason] for 'owner's account' were
invoiced to Eastwind Hellas and settled by Eastwind Hellas."
The "owners' items" are reflected in invoices of June 23 and 26,
and amount to less than $5,000 in total charges.  Mason further
alleges that "[a]t no time during the port agency appointment
was [Mason] told that it was acting on behalf of any entity
other than Eastwind Hellas, as operator and beneficial owner of
the Vessel."  A declaration attached to Mason's opposition brief
of September 8 concedes that the unpaid principal sum owed to
Mason is only $23,841.63 plus interest, or roughly one-quarter

5

of the $93,117.00 principal claim alleged by Mason in the Complaint.[1]  Mason did not provide copies of the invoices or demands for payment which the Complaint asserts that it presented to Hellas for the services covered by the Acceptance.

Mason is currently restraining funds in the amount of $116,389.84.  To date, Mason has not requested the Court to release any of the funds that it has restrained above the amount now required to secure its claim.  Counsel for Mason previously represented in a sworn declaration that "[p]laintiff has agreed to voluntarily release all funds in excess of USD 29,795.28, and [would] liaise with opposing counsel to prepare a Stipulated Order directing the release of the excess funds from the Registry of the Court."

## DISCUSSION

### I. Hellas's Motion to Vacate

Under the Supplemental Rules,

> an attachment should issue only if a plaintiff establishes four factors: (1) that the plaintiff has a valid prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found within the district; and (4) that there is no statutory or maritime law bar to the attachment.

Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008) (citing Aqua Stoli Shipping Ltd. v. Gardner Smith Pty

---

[1] The May 5, 2009 Acceptance between Mason and Maritime identified port costs of $92,816.00, not $93,117.00.

Ltd., 460 F.3d 434, 445 (2d Cir. 2006)).  Supplemental Rule
E(4)(f) provides that, once an attachment has occurred, "any
person claiming an interest in [the attached property] shall be
entitled to a prompt hearing" at which the person may contest
the attachment of property.  Fed. R. Civ. P. Supp. R. E(4)(f).

        Under Supplemental Rule E(4)(f), plaintiff bears the burden
of "show[ing] why the arrest or attachment should not be
vacated."  Id.; Aqua Stoli, 460 F.3d at 445 & n.5.  In other
words, the plaintiff must affirmatively demonstrate that the
four Aqua Stoli requirements have been met so that an attachment
is justified.  If the district court "determines, after hearing
from both parties, that the requirements of Rule B have not
actually been met," it should vacate the attachment.
Williamson, 542 F.3d at 52.  The district court may also vacate
a maritime attachment for equitable reasons "in other limited
circumstances," such as when the defendant is amenable to suit
in a convenient adjacent jurisdiction, when the plaintiff could
obtain in personam jurisdiction over the defendant in a
jurisdiction where the plaintiff is located, or where the
plaintiff has already obtained sufficient security for the
potential judgment.  Id. at 51 (citation omitted).

        Mason has failed to make out a valid prima facie claim for
breach of contract, account stated, or unjust enrichment because
Mason has failed to demonstrate that any contract exists between

                                    7

Mason and Hellas; that there are facts to support a claim for
account stated or analogous causes of action; or alternatively,
that Hellas has been directly and unjustly enriched by Mason's
services.[2]  Fairly read, the Complaint's three causes of action
are each premised on a contract executed between Mason and
Hellas for maritime services in the amount of $93,117.  It is
undisputed, however, that the contract on which the Complaint
rests was between Mason and Maritime and contains no reference
whatsoever to Hellas.

## A. Breach of Contract

    The first cause of action asserted by Mason is for breach
of contract.  It is axiomatic that there can be no breach of

---

[2] The Appointment and Acceptance do not provide for a contractual
choice of law.  Absent a choice of law by the parties, courts
determine the substantive law that governs an admiralty dispute
by applying conflict-of-laws principles.  See Carbotrade S.p.A.
v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996) (restating the
federal choice-of-law rules governing admiralty disputes); see
also Al Fatah Int'l Navigation Co. Ltd. v. Shivsu Canadian Clear
Waters Tech. (P) Ltd., No. 09 Civ. 4856 (DC), 2009 WL 2730616 at
*3-*4 (S.D.N.Y. Aug. 31, 2009) (describing split in authority in
this district over whether foreign substantive law must be
considered in determining whether plaintiff has alleged a valid
prima facie admiralty claim).  The Court need not reach the
question of what substantive law should be applied to resolve
the immediate question of whether the plaintiff has made out a
valid prima facie admiralty claim against Hellas under Rule B,
since under either United States law or Canadian law -- the
latter being the substantive law that would govern this dispute
if the factors enumerated in Carbotrade were applied -- it has
not.

contract unless there is a valid contract in the first instance.
Under the both Canadian and United States law, a contract is
formed when two or more parties agree to be bound to an
agreement bargained between them.  See, e.g., Mizuna, Ltd. v.
Crossland Fed. Sav. Bank, 90 F.3d 650, 658 (2d Cir. 1996) ("A
valid contract requires a manifestation of mutual assent to a
bargained-for exchange.")(citing Restatement (Second) of
Contracts § 17 (1981)); Montreal v. Vaillancourt, [1977] 2
S.C.R. 849, 852 (Can.) ("To make a contract the law requires
communication of offer and acceptance alike either to the person
for whom each is respectively intended or to his authorized
agent.").

It is obvious that Mason has failed to demonstrate the
existence of a valid contract between it and Hellas.  Mason's
Complaint offers no evidence of any agreement with Hellas, and
the materials supplied by Mason in its opposition brief serve
only to confirm the fact that the contract Mason is suing upon
was made with a different party.  Because Mason has failed to
prove the existence of a valid contract with Hellas in the first
instance, it cannot make out a prima facie claim for breach of
contract.

Mason argues that its materials submitted in opposition to
the motion to vacate should be considered by the Court.
According to Mason, Hellas is the "beneficial" owner of the

9

Vessel -- an assertion not included in Mason's Complaint.  This assertion does not salvage Mason's claim.  Even assuming arguendo that Hellas is the "beneficial owner" of the Vessel, Mason has failed to demonstrate how Hellas is thereby liable for the breach of Mason's Appointment with Maritime.  See Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 807-08 (2d Cir. 1971) (noting that, even if the court accepted plaintiff's argument that defendant Tidewater rendered services in connection with a maritime contract between plaintiff and Mooremac, plaintiff had failed to demonstrate how that course of conduct would make defendant liable on the contract made between plaintiff and Mooremac).

Mason further alleges that Hellas's denial of contract liability "is directly contradicted by Eastwind Hellas's course of conduct throughout the pendency of [Mason]'s port agency appointment."  As noted above, Mason alleges that "[t]hroughout the course of the port agency agreement, all 'owner's' items, including . . . payments for crew wages, spare parts and inspections were handled by [Hellas]."  Mason further alleges that "[a]t no time during the port agency appointment was [Mason] told that it was acting on behalf of any entity other than Eastwind Hellas, as operator and beneficial owner of the [Vessel]."

Mason's allegations misapprehend the nature of the inquiry. Hellas's putative payment of certain expenses incurred by the Vessel would not, without more, make it liable on any contract that Mason made with a third party.  Moreover, even assuming that Mason never received any indication that Hellas was <u>not</u> the beneficial owner of the Vessel, as Mason alleges, such a statement misconstrues the burden of proof governing this dispute.  Simply put, Mason bears the burden of demonstrating that it had a contract with Hellas.  Mere conclusory assertions of law masquerading as factual assertions do not suffice to make out a valid <u>prima</u> <u>facie</u> claim.

Corporations are presumed to be distinct and independent entities. "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil."  <u>Murray v. Miner</u>, 74 F.3d 402, 404 (2d Cir. 1996).  The plaintiff bears the burden of adducing proof sufficient to demonstrate that such "extraordinary circumstances" exist.  <u>Id.</u>  In the absence of such a showing, Mason's demonstration that it had a contract with Maritime is insufficient to justify attaching and restraining the assets of Hellas.

The Second Circuit's recent holding in <u>Williamson v. Recovery Limited Partnership</u> is instructive.  In <u>Williamson</u>, the

11

Second Circuit upheld the vacatur of a maritime attachment as to certain defendants, agreeing that plaintiffs had failed to make out a valid prima facie claim for breach of a maritime contract against those defendants.  Williamson, 542 F.3d at 52.  There, as here, plaintiff had named as a defendant certain "other corporate entities" who were not actually parties to the underlying contract.  The district court found that plaintiff's allegations "are supported merely by generalized assertions in the attorney-verified complaint . . . , unsworn court filings in related actions, and documentation showing common business addresses and management," and held that these allegations did not suffice to make out a prima facie admiralty claim.  Id.  The Second Circuit agreed with the district court's findings, noting "that this evidence is not sufficient to meet the requirements for a prima facie admiralty claim under Rule B."  Id. at 53.

In the instant case, Mason has alleged even less than did the plaintiffs in Williamson.  Aside from its repeated, and misleading, conclusory assertions, Mason's Complaint of July 31 supplies no evidentiary support for the claim that Mason had a contract with Hellas.  Now that it has become clear that no contract was negotiated and concluded between the parties to cover the unpaid expenses on which Mason brought suit and attached assets, Mason argues instead that Hellas should be held liable on the theory that Hellas is the "beneficial owner" of

12

the Vessel.  Mason does not, however, allege any facts to
support an equitable finding that Hellas should be held liable
for the contracts of Maritime or Ystwyth Inc.  See id.
(discussing the prerequisites for piercing the corporate veil in
federal maritime law).  Instead, the evidence supplied by Mason
to link Hellas to the Appointment is nothing more than "mere
conclusory statements" that are "insufficient to justify holding
[Hellas] liable as an alter-ego" of Maritime or Ystwyth Ltd.
Global Dominion S.A. v. Fairport Shipping Ltd., 2009 WL 2448111
at *3 (S.D.N.Y. Aug. 10, 2009); see also Eitzen Bulk A/S v.
Ashapura Minechem Ltd., No. 08 Civ. 8319 (AKH), 2009 WL 1360961
at *1 (S.D.N.Y. May 15, 2009) ("To make [a] prima facie showing
against an alleged alter ego defendant, a plaintiff may not
merely claim that the legal standards for alter ego liability
are met, but must allege some facts tending to show an actual
alter ego relationship.").  Therefore, Mason's breach of
contract claim does not justify a maritime attachment under
Supplemental Rule B.


### B. Unjust Enrichment

     Next, Mason alleges that it has a claim for unjust
enrichment.  Unjust enrichment is a cognizable claim under both
United States admiralty law, see Gulf Oil Trading Co. v. Creole
Supply, 596 F.2d 515, 520 (2d Cir. 1979) (recognizing the

13

existence of an unjust enrichment claim under admiralty law),
and Canadian law, see, e.g., Ermineskin Indian Band and Nation
v. Canada, [2009] 302 D.L.R. (4th) 577, 2009 SCC 9 (Can.).
Unjust enrichment requires a "show[ing] that the defendant was
enriched at the plaintiff's expense and that equity and good
conscience require the plaintiff to recover the enrichment from
the defendant." Giordano v. Thomson, 564 F.3d 163, 170 (2d Cir.
2009). In Canada, settled law holds that the elements of an
unjust enrichment claim are "(1) an enrichment of the defendant;
(2) a corresponding deprivation of the plaintiff; and (3) an
absence of juristic reason for the enrichment." Ermineskin,
para. 183.

    Here, too, Mason has failed to make a valid prima facie
claim of unjust enrichment regardless of the substantive law to
be applied. The Complaint alleges that Hellas "requested
[Mason] to provide necessary maritime services"; that Mason did
provide those services and has repeatedly demanded payment; that
"[d]efendant has unjustly received and retained the benefit of
the services rendered by [Mason]" and "inequitably benefited"
from its non-payment for those services; and that "[e]quity and
good conscience" require payment by Hellas to Mason the amount
of $93,117.00 plus interest. As already discussed, we now know
that the request for services, as reflected in the Appointment,
was made by Maritime and not Hellas. The Complaint contains no

facts tending to prove that Hellas -- as opposed to Maritime --
was the party who was unjustly enriched by Mason's performance
on the Appointment.  Nor has Mason, in opposition to this motion
to vacate, offered prima facie evidence tending to prove that
Hellas -- as opposed to Maritime or the Vessel itself -- was
enriched at plaintiff's expense.


### C. Account Stated

        Finally, Mason alleges that it has a claim for account
stated against Hellas.  To show an account stated under New York
law, the plaintiff must show that there has been "an agreement
between the parties to an account based upon prior transactions
between them."  LeBoeuf, Lamb, Greene & MacRae, L.L.P. v.
Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (citation omitted).  An
agreement need not be express, but may be implied by the
defendant's partial payment on a disputed account or by the
defendant's retention of a statement of account "without
objecting to it within a reasonable period of time."  Id.
(citation omitted).

        Although plaintiff cites no law, the analogous claim under
Canadian law appears to be a claim for judgment on a "debt or
liquidated demand."  See, e.g., DJ Estates Ltd. v. Rota Dev.
Inc., [2007] 39 C.B.R. (5th) 232, 2007 BCSC 1849 (Can.).  A
liquidated claim is "in the nature of a debt, i.e., a specific

sum of money due and payable under or by virtue of a contract."
Id. para. 42.  In Eades v. Kootnikoff, [1996] 1 W.W.R. 730
(Can.), the Supreme Court of British Columbia reiterated a five-
part analytical test to determining when a liquidated demand
exists.  Inter alia, this test requires ascertaining that "the
defendant obliged him/herself to pay a specific sum of money"
and that "the price or method of calculation of the price [be]
agreed upon by the parties" or implied by "the agreement between
the parties itself."  Id. para. 11.

Regardless of the substantive law applied, Mason has failed
to show an account stated or liquidated demand.  Mason alleges
in its Complaint that it has invoiced Hellas for the full amount
of $93,117, and that "[d]efendant has retained the invoices
received from [Mason] without objection" for "[m]ore than a
reasonable period of time."  As we now know, the contract for
these services was with Maritime, not Hellas, and Mason has
provided no evidence in opposition to this motion that it
invoiced Hellas for the services.  Indeed, it has not submitted
any of the invoices covering the port services identified in the
Appointment.  The only invoices Mason submitted were invoices
addressed to Hellas for other services.  Moreover, Mason does
not allege that Hellas has made partial payment or assured
future payment on any invoices for the services covered by the
Appointment.  Given these factual deficiencies, Mason has failed

16

to make out a valid <u>prima</u> <u>facie</u> claim for account stated or
liquidated demand.  Because Mason has failed to make a valid
<u>prima</u> <u>facie</u> claim against Hellas on any of its theories of
breach of contract, account stated, and unjust enrichment, the
August 3, 2009 Order of Attachment must be vacated.


## II. Mason's Request for Limited Discovery Prior to Vacatur

Mason's opposition brief of September 8, 2009, included a
request that, should the Court be inclined to vacate the
maritime attachment, limited discovery be conducted "regarding
the relationship between Eastwind Hellas, Ystwyth Ltd., and the
M/V Ystwyth" prior to the vacatur taking effect.

Mason's request is denied.  Mason has alleged no facts
tending to show that Hellas was a party to the Appointment or
Acceptance, nor any facts tending to suggest that Hellas has
been unjustly enriched or is liable on an account stated.  Mason
having manifestly failed to carry its burden of proof under
Supplemental Rule E(4)(f), fact discovery prior to vacatur is
unwarranted.


## III.  Mason's Request for a Stay Pending Appeal

Mason requests that, should the Court vacate the maritime
attachment, the order vacating the attachment be stayed while
Mason pursues an appeal to the Second Circuit.  Mason has not,

however, identified the legal standard governing this request or
discussed the relevant factors.

Four factors must be considered in determining whether a
stay should issue pending appeal of a district court order.
These factors are:

> (1) whether the stay applicant has made a strong
> showing that he is likely to succeed on the merits;
> (2) whether the applicant will be irreparably injured
> absent a stay; (3) whether issuance of the stay will
> substantially injure the other parties interested in
> the proceeding; and (4) where the public interest
> lies.

In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170
(2d Cir. 2007).  The degree to which any one of these four
factors must be present varies with the strength of the other
factors, "meaning that more of one factor excuses less of the
other."  Id. (citation omitted).  Thus, "[a] stay is not a
matter of right," Nken v. Holder, __ U.S. __, 129 S. Ct. 1749,
1760 (2009) (citation omitted), and "[t]he party requesting a
stay bears the burden of showing that the circumstances justify
an exercise of that discretion."  Id. at 1761.

Mason has not shown that a stay should issue.  Mason has
not made a showing that it is likely to succeed on the merits.
It also has not shown that it would be irreparably injured
absent a stay.  In considering any potential harm to Mason, it
is worth noting that the value of Mason's underlying claim is
itself unclear given the great variance between the damage

amounts alleged by Mason in the Complaint and conceded in its
more recent submissions.  Moreover, Hellas will be injured if
funds in excess of those to which Mason has any reasonable claim
continue to be restrained pending appeal.  Finally, given the
plaintiff's misleading pleadings, which won an <u>ex parte</u>
attachment, there is a strong public interest against rewarding
such advocacy by extending an attachment which in all likelihood
would never have issued with a forthright presentation of the
facts.  Therefore, Mason's request for a stay pending appeal to
the Second Circuit is denied.


        IV. Mason's Application for Leave to Amend the Complaint

        Finally, Mason also seeks leave to amend the verified
Complaint.  Hellas argues that the request should be denied
since Mason is guilty of "act[ing] in bad faith" and of "abusing
the ex parte procedure for obtaining a Rule B attachment by
inflating its damages and asserting a cause of action for breach
of contact [sic] when the defendant was not even a party to that
contract."

        Under the Federal Rules of Civil Procedure, any party may
amend its pleading once as a matter of course before it is
served with a responsive pleading.  Fed. R. Civ. P. 15(a)(1)(A).
Because Hellas has not yet answered, Mason is entitled to amend
the Complaint once as a matter of course.

19

## CONCLUSION

Defendant's August 27, 2009 motion to vacate the maritime attachment is granted.  The August 3, 2009, Order to Issue Process of Maritime Attachment and Garnishment is hereby vacated.  Plaintiff is directed to secure immediately the release of the attached funds.

SO ORDERED:

Dated:    New York, New York
          September 29, 2009

                                    DENISE COTE
                                    United States District Judge