```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MASON AGENCY LTD.,                       :
                    Plaintiff,           :   09 Civ. 6474 (DLC)
                                         :
          -v-                            :      MEMORANDUM
                                         :    OPINION & ORDER
EASTWIND HELLAS SA,                      :
                    Defendant.           :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
George Michael Chalos
Chalos & Co., P.C.
123 South Street
Oyster Bay, NY 11771

DENISE COTE, District Judge:

On September 29, 2009, an Opinion and Order ("Order") was issued directing plaintiff Mason Agency ("Mason"), George M. Chalos ("Chalos"), and Chalos & Co., P.C. ("Chalos & Co.") (collectively, "Respondents") to show cause why each should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(c)(1). For the following reasons, the Court declines to impose Rule 11 sanctions on Respondents.

BACKGROUND

The pertinent facts are set out in the Order of September 29, 2009, which directed Respondents to show cause why they should not be sanctioned with respect to two separate matters.

First, the Order directed Respondents to explain why Mason sought a Rule B maritime attachment against defendant Eastwind Hellas S.A. ("Hellas"), founded on an underlying claim of breach of contract, given that Mason had not contracted with Hellas but with another entity.  Second, Respondents were directed to explain why Mason had requested and obtained a Rule B attachment in an amount four times greater than that necessary to secure its damages claim.

In response to the Order, Respondents argue that sanctions are not warranted under the circumstances of this case.  With respect to the first matter, Respondents represent that Mason and Hellas had a pattern of preexisting business dealings whereby Mason served as Hellas's regular port agency in Vancouver for many years.  Respondents also state that Hellas was copied on an initial email communication sent by Eastwind Maritime, Inc. ("Maritime") to Mason on April 30, 2009, and which contained a paragraph directing a Hellas employee to "note above appointment of protective agency" and to "pls coordinate closely w/Mason."  This email was an informal antecedent to the formal port agency appointment of May 5, 2009 ("Appointment"), in which Mason was directed to provide necessaries and other services to the M/V Ystwyth (the "Vessel") while the Vessel called at port.  Respondents argue that nothing in the April 30 email or the May 5 Appointment "provided any information to

suggest anything other than [that] Eastwind Hellas was the 'owner' of the vessel and the party whom Mason Agency was acting for," and that such lack of documentation concerning the identity of the Vessel's owner is "squarely in line with the practice and custom of the ship agency business."  Moreover, Respondents assert that Hellas paid certain "owner's items" that came due during the pendency of the port agency agreement. Thus, Respondents maintain that Mason sought an attachment against Hellas on the basis of "a bona fide good faith belief that Eastwind Hellas was, in fact, the beneficial 'owner' of the [Vessel] to which the Port Agency Appointment referred."

With respect to the second matter, Respondents maintain that the discrepancy between the amount of the initial Rule B attachment obtained by Mason ($116,389.84, including principal of $93,117.00 and interest of $23,252.84) and the actual damages sustained by Mason ($23,841.63, plus interest) was the result of "an accounting error that remained undetected by Mason" and unknown to the other Respondents until Hellas moved to vacate the attachment.  This accounting error resulted from a failure to take into account a subsequent payment received by Mason for services it had rendered to the Vessel.  Respondents submit that the ensuing delay in releasing the excess funds was "based upon [a] mutual understanding with defense counsel" to "take a 'wait and see' approach" pending the resolution of Hellas's motion to

vacate the maritime attachment.  As such, Respondents assert that neither the inflated amount of the attachment nor the delay in releasing the excess funds was the product of bad faith.

## DISCUSSION

Rule 11(c) of the Federal Rules of Civil Procedure permits the Court, acting on its own initiative, to sanction an attorney, law firm, or party if the court determines -- after notice and a reasonable opportunity to respond -- that the attorney, law firm, or party has violated Rule 11(b) by making "false, misleading, improper, or frivolous representations to the court."  Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008); Fed. R. Civ. P. 11(c)(1)-(3).  The normal standard against which a respondent's conduct is judged in determining whether Rule 11 sanctions should be imposed is "objective unreasonableness."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) ("ATSI").  Under the law of this Circuit, however, when Rule 11 is invoked sua sponte by a court "long after [the respondent] had an opportunity to correct or withdraw the challenged submission," a lawyer may only be sanctioned "upon a finding of subjective bad faith."  Id.; see also In re Pennie & Edmonds LLP, 323 F.3d 86, 91 (2d Cir. 2003) ("Pennie") (originating the "bad faith" exception to the general rule of "objective unreasonableness"); cf. Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329 (2d Cir.

4

1995) (noting that sua sponte Rule 11 sanctions "will ordinarily be imposed only in situations that are akin to a contempt of court" (citation omitted)).  As the court explained in ATSI:

> The exception is justified in order to strike a proper "balance," and prevent over-deterrence. . . .  When the sanctions process is initiated by a motion from an opposing party (under Rule 11(c)(2)), the challenged lawyer has a 21-day "safe harbor" to withdraw or amend.  When sanctions are initiated by a court sua sponte (under Rule 11(c)(3)), no such safe harbor is afforded.

579 F.3d at 150.  Although ATSI distinguished Pennie by stating that the latter's holding does not apply where sanctions are imposed subject to the statutory authority of the Private Securities Litigation Reform Act, ATSI did recognize the continued validity of the Pennie exception.  In the instant case, because the Order was not made pursuant to statutory sanctions authority, but instead sua sponte pursuant to Rule 11(c), Pennie applies and Respondents may only be sanctioned upon a showing of "subjective bad faith."

With respect to the first matter addressed in the Court's Order, Respondents' response is not wholly satisfying.  Indeed, Respondents do not explain why Mason's verified complaint and application for maritime attachment each failed to identify "all material facts . . . that will enable the tribunal to make an informed decision," as is required of all counsel participating in ex parte proceedings.  ABA Model Rule of Professional Conduct 3.3(d); N.Y. Rule of Professional Conduct 3.3(d).  These

5

undisclosed material facts included the fact that two separate "Eastwind" entities existed; that Mason had negotiated and concluded the Appointment with Maritime, not Hellas; that Maritime had acted as an agent for a disclosed but unidentified principal; and that Mason's underlying cause of action was founded on a legal theory of "beneficial owner[ship]." Indeed, the verified complaint was affirmatively misleading in representing that the amount due was pursuant to a contract with Hellas when the contract was concluded with Maritime. These omissions and misrepresentations were material in that the ex parte attachment may not have issued if Mason had made a complete disclosure of the relevant facts. Nevertheless, the Court does not have before it sufficient evidence tending to show that Mason, Chalos, or Chalos & Co. submitted their request for a Rule B attachment with subjective bad faith.

## CONCLUSION

For the foregoing reasons, the Court declines to impose Rule 11 sanctions against Respondents.

SO ORDERED:

Dated:   New York, New York
         November 12, 2009

                                        _____
                                        DENISE COTE
                                        United States District Judge